## Dixie Atlas Republic Insurance Co. v. Landers.

(Decided Nov. 10, 1933.)

DELOZIER MOXLEY for appellant.

CARL OUSLEY, Jr. and J. P. McCORMACK for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

The Atlas Life Insurance Company, on November 4, 1929, issued to Louella Collins a policy of insurance upon the industrial plan, insuring her life in the sum of $500, in consideration of the payment of a weekly premium of 30 cents. Her mother, Mary W. Collins, was named the beneficiary. About a year afterwards the beneficiary was regularly changed to Susan Landers, who was her grandmother, and she afterwards made the weekly payments. The insured died on January 11, 1931. The company refused to pay, and Susan Landers brought this action against the Dixie Atlas Republic Insurance Company, the successor of the original insurer by consolidation.

The defendant by its answer alleged that the last payment on the policy was made on October 27, 1930, and that the policy had lapsed for nonpayment of the premium before the death of the insured. The plaintiff denied that there had been any failure to pay the weekly premiums. The case was submitted to a jury, who returned a verdict for the plaintiff. On motion of the defendant the court granted a new trial. The jury again found for the plaintiff. The court entered judgment on the verdict, refused a new trial, and the defendant appeals.

The only question made on the appeal is whether the policy had lapsed for nonpayment of the premium. The defendant introduced its books showing that no payment had been made on the policy after October 27, 1930. It also introduced two witnesses, George Witten and J. P. Burns, who testified in substance that no payment was made after October 27. But it appears from their testimony that there were two collectors who customarily called upon plaintiff to collect the premiums. One was J. P. Burns and the other Robert Witten; the latter did not testify. On the other hand, the plaintiff and her witnesses positively state that she made the payments regularly each week up to the death of the insured, either on Saturday or the following Monday, and that these payments were made to Robert Witten. He, when she would make a payment, would enter the payment in her premium book, which she kept hanging on a nail in the kitchen. All the payments were so entered in that book. After the insured's death she took her policy and the book to the defendant's office and demanded payment. The agent gave her a receipt for the

policy and the book and told her that she would be paid in a few days. The receipt book was not produced at the trial. The agent testified that she gave it to the manager, Mr. Harris, and he did not testify. The defendant, at the trial, produced what is called a duplicate receipt book which had been made out by George Witten from the company's records. But this was not the book that the plaintiff had turned in and simply showed the facts as shown by the company's books. Burns testified that on several occasions he told the plaintiff that the policy was about to lapse and that the last payment was made on the policy on October 27, but she and her witnesses denied that anything of this sort was said. Nothing was said to her about the policy having lapsed when she delivered it at the office and took a receipt for it. She proved by herself and her witnesses that Robert Witten first came to her and offered her $25 in settlement of her claim and then offered her $50, informing her that if she did not accept the money he would lose his job. She declined to accept the money and heard no more from him. He was not produced at the trial.

The defendant also showed that a new application was made in December for a new policy by Louella Collins and that a new policy was issued, but was never delivered and was in the hands of its agent. On the other hand, the plaintiff testified and proved by several witnesses that Louella Collins did not sign any such application but was absent from the city at the time, and that they never heard anything of this new policy and all the payments were made on the old policy.

There was positive testimony by two witnesses that the payments had been made regularly every week and entered on the receipt book by the agent, Robert Witten, and it stood admitted that this book had been accepted by the company with the policy. There was sufficient evidence here to take the case to the jury; for if the plaintiff's proof was true, these premiums had been paid to Robert Witten and his admitted conduct, after the company refused to pay, tended strongly to confirm this testimony. The court cannot say that the verdict is against the evidence. "In cases of conflicting evidence, depending upon the credibility of the witnesses, the verdict of a properly instructed jury is conclusive, and this court is not authorized to interfere even though

the majority of the witnesses and the weight of the evidence is with the losing party. Powell v. Galloway,. 229 Ky. 37, 16 S. W. (2d) 489; Peak v. Arnett, 233 Ky. 756, 26 S. W. (2d) 1035. The court is empowered to set aside a verdict on the ground of insufficient evidence to sustain it only when the verdict is flagrantly and palpably against the manifest weight of the proven facts and circumstances.'' Mann's Ex'r v. Leyman Motor Co., 234 Ky. 639, 28 S. W. (2d) 956, 957.

Judgment affirmed.